# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01012-COA

**BENJAMIN W. ALLEN III A/K/A BENJAMIN WADE ALLEN III A/K/A BEN ALLEN**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/2017 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | MERRIDA COXWELL CHARLES RICHARD MULLINS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 01/29/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, C.J., CARLTON, P.J., AND TINDELL, J.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     A Hinds County jury found Benjamin Wade Allen guilty of one count of embezzlement in violation of Mississippi Code Annotated section 97-11-25 (Rev. 2014). The trial court sentenced Allen to serve five years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended, and two years of supervised probation.  The trial court also ordered Allen to pay restitution.  Allen filed posttrial motions, which the trial court denied.

¶2.     Allen now appeals his conviction and sentence, and he asserts the following

assignments of error: (1) the evidence was insufficient to support Allen's conviction; (2) the verdict was against the overwhelming weight of the evidence; (3) the State failed to prove the essential elements required to prove embezzlement under section 97-11-25; (4) the trial court improperly instructed the jury; (5) an impermissible variance existed between the indictment and the proof presented by the State at trial; (6) the trial court erred by admitting improper evidence pursuant to Mississippi Rule of Evidence 404(b); and (7) the State improperly commented on Allen's failure to testify on his behalf.

¶3. After reviewing the record, we find that the evidence introduced at trial was insufficient to support Allen's conviction for embezzlement. Therefore, we reverse and render a judgment of acquittal on that count. In finding the weight and sufficiency of the evidence in this case insufficient to sustain the conviction, we decline to address the remaining assignments of error.

**FACTS**

¶4. In 2014 and 2015, the State Auditor began an investigation into how Downtown Jackson Partners (DJP), a private nonprofit organization, utilized funds collected from business owners in the Jackson area. However, the record shows that the Hinds County District Attorney's office subpoenaed the investigation files from the auditor's office before completion of the investigation.

¶5. In February 2016, as a result of the investigation, a Hinds County grand jury indicted Allen, the president of DJP, for eight counts of embezzlement in violation of Mississippi Code Annotated section 97-11-25. In the indictment, Allen was accused of wrongfully

2

converting to his own use and failing to return as required: (1) a 1989 Chevrolet pickup truck valued at $3,500; (2) $2,724.76 for repairs to the pickup truck; (3) $1,810.21 for insurance and tag registration costs for the pickup truck; (4) $1,738.37 worth of cell-phone charges for his wife Susie Allen's cell-phone bill; (5) $6,620.97 worth of payments to his personal credit card bill; (6) $38,372.99 worth of payments to another personal credit card bill; (7) $86,000 that was used for Tony Yarber's Inauguration Gala; and (8) $40,136.55 worth of unauthorized donations and sponsorships. Allen was also indicted for one count of fraudulent misuse of public funds, in violation of Mississippi Code Annotated section 97-7-10 (Rev. 2014), for making false representations to defraud government by causing $65,745.24 to "be used for a fraudulent Business Incubator Program," and one count of limitation of corporate donation, in violation of Mississippi Code Annotated section 97-13-15, by donating $86,000, an amount in excess of $1,000 in a calendar year, to a political party or candidate for a public office.

¶6. After a trial held in January 2017, the jury convicted Allen of one count of embezzlement—specifically, Count IV of the indictment which charged Allen with embezzling the money used to pay his wife's cell-phone bill.[1] The jury acquitted Allen of

---

[1] At trial, the State called the following witnesses to testify: Melissa Patterson, a special assistant attorney general who was assigned to the Department of Audit during the DJP investigation; Eddie Fair, the Hinds County Tax Collector; Derrick Garner, an accountant with the Department of Audit; Tameka Garrett, an event coordinator for Mayor Tony Yarber's Inauguration Gala. The defense called the following witnesses: John Reeves, a former board member at DJP; Mike Peters, a former board member and executive committee member at DJP; Robert Gibbs, the attorney for DJP; Bobby Viverette, operations manager at DJP. The State also called Kenneth Stokes, a city councilman and former employee at the Tax Collector's Office, as a rebuttal witness.

all other charges in the indictment. The trial court sentenced Allen to serve five years in the custody of the Mississippi Department of Corrections, with five years suspended, and two years of supervised probation. The trial court also ordered Allen to pay $1,738.37 in restitution. Allen filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial, which the trial court denied.[2] Allen now appeals.

## DISCUSSION

¶7.     Allen argues that the evidence presented at trial was insufficient to show that he was guilty of embezzlement. Allen maintains that the evidence shows that DJP knowingly allowed Susie Allen to be included on the DJP cell-phone plan, and that Allen fully reimbursed DJP for Susie Allen's cell-phone charges.

¶8.     When reviewing a defendant's challenge to the sufficiency of the evidence, this Court

> considers each element of the offense and reviews all of the evidence in the light most favorable to the verdict. Th[e] Court must accept as true all credible evidence consistent with guilt. Th[e] Court must give the State the benefit of all favorable inferences that may reasonably be drawn from the evidence. Moreover, matters regarding the weight and credibility given the evidence are the province of the jury. Th[e] Court may reverse only when, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Thus, if any rational trier of fact could have found each and every one of the elements of the crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution, the verdict must stand.

*Smith v. State*, 250 So. 3d 421, 424 (¶12) (Miss. 2018) (quoting *Cowart v. State*, 178 So. 3d 651, 666 (¶41) (Miss. 2015)). We recognize that in reviewing the sufficiency of the

---

[2] The record reflects that during the trial, Allen moved for a directed verdict at the close of the State's case-in-chief, and again when the State finally rested. The trial court denied both of these motions.

evidence, "[w]e are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Lenoir v. State*, 222 So. 3d 273, 278 (¶25) (Miss. 2017) (citation and internal quotation marks omitted). We now turn to apply the law to the facts of this case.

¶9.     Count IV of the indictment charged Allen as follows:

> While acting in concert with and or aiding abetting or encouraging another or others, on about September 1, 2010 to January 31, 2014,
>
> [Allen,] being a person undertaking to act for others and intrusted by them with business of any kind or money did willfully, unlawfully and feloniously convert to his own use any money or other valuable thing to wit a $1,738.37 for payment of [Allen] and [Susie] Allen's personal cell phone bill said $1,738.37 being the lawful property of Downtown Jackson Partners, a nonprofit corporation, which lawful currency came into his possession by virtue of his employment at Downtown Jackson Partners, a nonprofit corporation, and which monies he did not return to Downtown Jackson Partners in violation of Miss. Code Ann. 97-11-25[.]

¶10.    Section 97-11-25, the statute under which Allen was indicted, provides:

> If any state officer or any county officer, or an officer in any district or subdivision of a county, or an officer of any city, town or village, or a notary public, or any other person holding any public office or employment, or any executor, administrator or guardian, or any trustee of an express trust, any master or commissioner or receiver, or any attorney at law or solicitor, or any bank or collecting agent, or other person engaged in like public employment, or any other person undertaking to act for others and intrusted by them with business of any kind, or with money, shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office or employment, or shall not, when lawfully required to turn over such money or deliver such thing, immediately do so according to his legal obligation, he shall, on conviction, be committed to the department of corrections for not more than twenty (20) years, or be fined not more than five thousand dollars ($5,000.00).

5

¶11. The record reflects that at trial, the State argued that DJP was bound to act within its stated purposes. The State maintained that the addition of Susie Allen to the cell-phone plan did not further DJP's stated purposes and was therefore unlawful. The State maintained that since the cell-phone plan allegedly fell outside of DJP's stated purposes, then DJP's approval of Susie Allen's placement on such plan was void. The State further asserted that because DJP's approval of Susie Allen's placement on the DJP cell-phone plan was void, Allen therefore committed embezzlement by including her on the plan. The State also argued that although DJP's board approved of Susie's placement on the cell-phone plan, the record shows that Allen failed to fully reimburse DJP for his wife's cell-phone charges. The State asserted that Allen was guilty of wrongfully converting DJP funds to his own use, in violation of section 97-11-25. On appeal, the State maintains that a reasonable juror would be justified in accepting this theory of the case. However, in its case-in-chief at trial, the State presented no testimony or evidence from DJP or its representatives to show that Allen acted without authority or permission of the DJP board or that Allen owed any debt to DJP.

¶12. The State instead presented the testimony of Derrick Garner, an investigator with the State Auditor's Office, who confirmed that the auditor's office failed to complete its investigation into DJP. Garner testified that he conducted the investigation into DJP and prepared a report of his findings. Once he discovered certain alleged violations by Allen, Garner testified that the Hinds County District Attorney's office subpoenaed the DJP investigation files from the State Auditor's office. Garner admitted that he had not completed his investigation before the case was turned over to the district attorney's office.

6

During cross examination, the following exchange occurred:

> [DEFENSE]: And, in fact, your investigation with the Auditor's Office was incomplete; correct?
>
> . . . .
>
> GARNER: Yes, sir. It was not completed their entire review process.
>
> [DEFENSE]: In fact, your report that we've been talking about has stamped on there incomplete investigation as of October 2015?
>
> GARNER: Correct.
>
> [DEFENSE]: And that was the time period when the Hinds County district attorney subpoenaed those documents from the Auditor's Office?
>
> GARNER: Correct.
>
> [DEFENSE]: Because you had not yet completed your investigation in to Downtown Jackson Partners?
>
> GARNER: Yes. Our entire office has not completed the investigation.

¶13. Garner also testified that during his investigation, he did review one audit report from DJP's accounting firm, BKD. Garner acknowledged that BKD possessed other auditing documents and records regarding DJP and Allen, but he did not have a chance to review those documents before his investigation was cut short.

¶14. Regarding Susie Allen's cell-phone charges, Garner testified that before his investigation stopped, he found documentation showing that Allen did write one reimbursement check for one year from Susie Allen's cell phone bill. Garner stated that he did not see any other reimbursement payments. However, Garner admitted that there were

7

several documents, audits, and receipts that he was not able to view after he stopped his investigation.

¶15. Garner also admitted that prior to his investigation being stopped, he had not had an opportunity to interview several members of DJP's board of directors. Garner testified that he could not recall if, during his investigation, he was advised that the DJP board members were aware that Susie Allen was on the DJP cell-phone bill. When asked whether he was able to find out if Allen received permission from DJP's board to put Susie Allen on the cell-phone bill, Garner answered "No." Garner admitted that if DJP was aware that Susie Allen was on the cell-phone bill, and DJP knowingly paid the bill each month, then such action would not constitute embezzlement:

| [DEFENSE]: | If Downtown Jackson Partners was aware that Ms. Allen was on the phone bill and they knowingly paid the phone bill every month, that would not constitute embezzlement; correct? |
|---|---|
| [GARNER]: | Correct. |
| [DEFENSE]: | Thank you. And do you know, were you allowed to investigate whether the board was aware and approved that the reimbursement program that Mr. Allen had worked out with his cell phone, were you aware of that? |
| [GARNER]: | No. |

¶16. Mike Peters, a witness for the defense, testified that he served on the DJP board from 2009-2013 before rotating off. Peters testified that he also served on the DJP executive committee. Peters testified that although he did not recall any discussion where the executive committee of DJP approved Allen adding Susie on to the DJP cell-phone plan, Peters did

8

recall seeing Allen's reimbursement for the charges on a DJP financial statement.

¶17. Robert Gibbs testified that in December 2011, DJP asked him to serve as its attorney. Gibbs testified that after the State Auditor's investigation, the DJP board and executive committee asked Gibbs to perform his own investigation and advise the board whether Allen should be removed as DJP president, in light of the State's charges against him. In performing his investigation, Gibbs explained that he "looked at each of the ten counts in the indictment[,] I reviewed all of the documents that [DJP] had [. . . , and] I compared them to allegations that were in the indictment and then I reported to the board." Gibbs also explained that DJP contracted with BKD, an accounting firm, to handle check writing responsibilities, audit bills, and make sure that accounts were paid appropriately.[3]

¶18. Regarding Susie Allen's cell-phone bill, Gibbs testified as follows:

[DEFENSE]: Okay. Now, did you personally investigate and look for checks where Mr. Allen reimbursed Downtown Jackson Partners?

[GIBBS]: Yes.

[DEFENSE]: Okay. And who helped you in that endeavor?

[GIBBS]: Again, that John Gomez who pulled most of those checks for me.

[DEFENSE]: Okay. And did you personally view them?

[GIBBS]: I did.

[DEFENSE]: Were those checks all paid at the last minute after the indictment or could you tell us when they were paid?

---

[3] The record reflects that in Allen's motion to dismiss the indictment, he stated that BKD performed yearly audits of DJP.

9

| [GIBBS]: | No. The way the processed worked when those bills came in, Downtown Jackson Partners would cut a check for those bills. They would identify the amount of [Susie] Allen's cell phone bill on that amount, and Mr. Allen immediately would write a check for that amount to Downtown Jackson Partners. |
|---|---|

¶19.   Gibbs also testified that DJP's board was aware of and approved Susie Allen's phone line on DJP's cell-phone plan:

| [DEFENSE]: | What, if anything, did the board of directors of Downtown Jackson Partners realize in regards to Susie Allen's phone line? |
|---|---|
| [GIBBS]: | The board knew about the line, approved the line. They didn't want to pay for the line, so that's where Mr. Allen reimbursed them for it, so Downtown Jackson Partners was never out of any money because of an extra line that was on that account. |
| [DEFENSE]: | And were those records, additional records that you-all found available had you met with an auditor or Mr. Derrick Garner at any time? |
| [GIBBS]: | Yeah. We could have provided all of those records. They are available now. |
| [DEFENSE]: | Okay. Did you ever meet with Mr. Garner or anyone after this file was subpoenaed to Mr. Smith's office? |
| [GIBBS]: | No. Mr. Garner never asked to meet with me. |

Gibbs further testified that after conducting his investigation, he presented his findings to the

DJP board. The board then voted upon and passed a resolution stating that Allen "was

authorised to include an additional telephone subscription in the name of Susie Allen on the

corporation's account with C Spire for cellular telephone services with the understanding that

10

Mr. Allen would reimburse the corporation for the monthly charge for this subscription." The resolution also stated that "the expenditure for the additional subscription was completely authorized and the accountants for DJP received full reimbursement." The resolution was included in the record as an exhibit at trial.[4]

¶20.    In *Roberts v. State*, 960 So. 2d 529, 531 (¶7) (Miss. Ct. App. 2006), Kenneth Roberts claimed that the evidence presented at trial was insufficient to support his conviction for embezzlement. Roberts argued that the trial court therefore erred in denying his motion for a directed verdict. *Id.* On appeal, this Court acknowledged that "[e]mbezzlement requires the wrongful appropriation or conversion of property where the original taking was lawful or with the consent of the owner." *Id.* at 533 (¶15) (citation and internal quotation marks omitted). This Court reviewed the evidence presented at trial and found as follows:

> The State has shown no attempt by Roberts to wrongfully convert [his employer's] products to his own use. Roberts made some bad business decisions . . . and is liable to [his employer] for those debts, but Roberts did not intend to embezzle or appropriate [his employer's] products to his own use. The deficiencies in payment on credit by the non-approved customers were deducted by agreement from Roberts's commission. [The employer] did not complain until Roberts got in over his head and the debt accrued to more than could be covered by his commissions.

*Id.* After viewing the evidence in the light most favorable to the State, this Court held that the evidence was insufficient to sustain Roberts's conviction for embezzlement, and therefore the trial court erred in denying Roberts's motion for a directed verdict. *Id.* at (¶16).[5]

---

[4] We note that page 5 of the 9-page resolution does not appear in the record.

[5] *See generally Hooker v. State*, 516 So. 2d 1349, 1353 (Miss. 1987) (Upon review of appellant's embezzlement conviction, supreme court held "conversion would not be unlawful if the owner of the property consented thereto or made a gift of the property upon

11

¶21. As stated, when reviewing a defendant's attack on the sufficiency of the evidence presented at trial, we must consider each element of the offense and review all of the evidence in the light most favorable to the verdict. *Smith*, 250 So. 3d at 424 (¶12). We must also "give the State the benefit of all favorable inferences that may reasonable be drawn from the evidence." *Id*. In order to prove that Allen was guilty of embezzlement under section 97-11-25 and pursuant to the charges set forth in his indictment, the State had to show that DJP owned the money at issue, that Allen unlawfully converted the $1,738.37 owed for Susie Allen's cell-phone bill to his own use, and that Allen failed to reimburse DJP for the charge. Our review of the evidence presented by the State reflects that the State failed to present any testimony from DJP board members stating that Allen did not have permission to add Susie Allen to the cell phone plan. Additionally, we find no testimony in the record from DJP board members or its authorized representatives claiming that Allen failed to reimburse DJP for Susie Allen's cell-phone charges. The State only presented evidence showing that during the state auditor's office investigation into DJP, Garner found only one reimbursement check for the disputed phone expense. Garner also testified that he never completed his investigation before the District Attorney's office subpoenaed the investigation records, and that he only reviewed one of DJP's audit reports prepared by BKD. The State also presented no evidence to show that no other reimbursements occurred or that Allen acted without the DJP board's permission. The defense, however, presented uncontradicted testimony stating that Allen did in fact have permission from the DJP board to add Susie to the cell-phone plan,

---

receipt.").

as well as testimony that Allen did reimburse DJP for Susie's cell-phone charges. The State's case hinges on its claim that the permission by the DJP board to Allen was allegedly void and therefore the State claims that Allen committed conversion necessary for embezzlement by acting on such void consent. The State cites no legal authority for its claim that the Board's consent was void or that Allen's actions in acting upon this allegedly void consent constitute sufficient evidence to show conversion or the charged embezzlement.

¶22.    After our review of the record, we conclude that the State failed to present evidence sufficient to convict Allen of embezzlement under Count IV of the indictment. We therefore reverse and render a judgment of acquittal on Count IV of the indictment. Since we are reversing Allen's conviction, we find no need to discuss his remaining issues on appeal.

¶23.    **REVERSED AND RENDERED.**

**GRIFFIS, C.J., BARNES, P.J., GREENLEE, TINDELL, LAWRENCE AND McCARTY, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WILSON AND McDONALD, JJ., NOT PARTICIPATING.**

13